IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| UNITED STATES OF AMERICA | Criminal Action No. |
|---|---|
| v. | 1:18-CR-314-TCB |
| HUBERT NATHANS | |

**RESPONSE TO 28 U.S.C. § 2255 MOTION TO VACATE, SET ASIDE OR CORRECT SENTENCE**

The United States of America, by Ryan K. Buchanan, United States Attorney, and Matthew R. LaGrone, Assistant United States Attorney for the Northern District of Georgia, files this Response to Hubert Nathans's 28 U.S.C. § 2255 Motion to Vacate, Set Aside or Correct Sentence.

**I. Introduction**

The claims set forth in Hubert Nathans's pro se Section 2255 motion are difficult to decipher. But construing the claims liberally, he asserts generally that his attorneys were ineffective because they: (i) did not ask the Court to credit time on home confinement against Nathans's sentence; (ii) did not challenge Nathans's criminal history calculation; (iii) did not ensure that Nathans could serve his sentence at a "camp;" and (iv) failed to respond to all of Nathans's questions and

concerns.[1] (Doc. 35 at 4-11). His claims do not require an evidentiary hearing because the record is sufficient for the Court to determine the issues: his claims should be denied. His claims of ineffective assistance of counsel are contradicted by the record. Nathans has failed to meet his burden to establish that his counsel's representation fell below an objective standard of reasonableness, and that he was prejudiced.

## II. Background

### A. Offense Conduct

From approximately September 2017 to February 2018, Nathans—along with co-defendant Edward Culton—conspired together to distribute fake Roxicodone pills that contained fentanyl. (Amended Presentence Investigation Report ¶ 12). Nathans purchased 100 fake Roxies from Culton four or five times per week and sold them to customers at parking lots around his house. (*Id*. ¶¶ 23-24). Nathans did not know what the pills actually contained, though he had heard they contained fentanyl. (*Id*. ¶ 24).

On October 3, 2017, T.C. purchased six fake Roxies from Nathans. (*Id*. ¶ 35). The next morning, T.C. was found dead. (*Id*. ¶ 31). The blood report indicated a fatal level of fentanyl in his system. (*Id*.)

E.M. purchased fake Roxies from Nathans on January 8, 2018. (*Id*. ¶ 40). After E.M. snorted one-quarter pill of the fake Roxies, she overdosed. (*Id*.) Her husband

---

[1] *See Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998) ("*Pro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed.").

2

found her unresponsive and took her to North Fulton Hospital, where she received a naloxone IV. (*Id*. ¶ 41). She recovered and was released. (*Id*.)

### B. Procedural History

On May 15, 2018, a grand jury returned an indictment against Nathans charging him with conspiracy to possess fentanyl with intent to distribute and possession of fentanyl with intent to distribute. (Case No. 1:18-cr-168, Doc. 25). On July 12, 2018, the United States filed a Section 851 sentencing information to establish a prior conviction, in order to invoke enhanced punishments contained within Sections 841(b)(1)(C) and 846. (Case No. 1:18-cr-168, Doc. 45)

On August 13, 2018, the United States charged Nathans in an information with conspiracy to possess with intent to distribute fentanyl, which resulted in serious bodily injury and death. (Doc. 1). That same day, Nathans entered into a written, negotiated plea of guilty to the sole count in the information. (Doc. 3-1). In the plea agreement, Nathans agreed that the offense of conviction established that death or serious bodily injury resulted from the use of the substance. (Doc. 3-1 ¶ 16(b)). That charge contained a twenty-year mandatory minimum. *See* 21 U.S.C. § 841(b)(1)(C). Per the plea agreement, the United States agreed to dismiss the indictment in Case No. 1:18-cr-168, as it pertained to Nathans, as well as the Section 851 sentencing enhancement. (Doc. 3-1 ¶¶ 11-12).

Finally, in paragraph 34 of the plea agreement, Nathans agreed to waive most of his rights to appeal or collaterally challenge his conviction:

LIMITED WAIVER OF APPEAL: To the maximum extent permitted by federal law, the Defendant voluntarily and expressly waives the right to appeal his conviction and sentence and the right to collaterally attack his conviction and sentence in any post-conviction proceeding (including, but not limited to, motions filed pursuant to 28 U.S.C. § 2255) on any ground, except that the Defendant may file a direct appeal of an upward departure or upward variance above the sentencing guideline range as calculated by the district court. Claims that the Defendant's counsel rendered constitutionally ineffective assistance are excepted from this waiver. The Defendant understands that this Plea Agreement does not limit the Government's right to appeal, but if the Government initiates a direct appeal of the sentence imposed, the Defendant may file a cross-appeal of that same sentence.

(Doc. 3-1 ¶ 34). The Court accepted Nathans's guilty plea and found that it was knowingly, intelligently, and voluntarily made. (Doc. 3). Nathans was represented by now-Judge Regina Cannon through his guilty plea. (Doc. 3-1 at 23, 25).

### C. Sentencing

The Court sentenced Nathans on November 16, 2022. Because Judge Cannon had been appointed to the bench in the interim between Nathans's guilty plea and sentencing, Nathans was represented by court-appointed counsel Paul Cognac at sentencing. (Docs. 8, 9).

At sentencing, the Court calculated Nathans's Total Offense Level as 40. (PSR ¶ 57; Sentencing Tr. at 2:23-3:7). His Base Offense Level was 43 because he was convicted under Section 841(b)(1)(C) and the conviction established that death or

4

serious injury resulted from the offense. (PSR ¶ 48).[2] He received a three-level downward adjustment for acceptance of responsibility. (PSR ¶ 56; Sentencing Tr. 2:23-3:7).

Nathans had seven previous adult convictions that were used to calculate his criminal history:

- March 2009: Theft by Receiving Stolen Property, and Loitering and Prowling;
- October 2009: Possession of Marijuana with Intent to Distribute;
- February 2010: Possession of Less Than One Ounce of Marijuana;
- August 2010: Theft by Receiving Stolen Property;
- November 2010: Possession of Marijuana with Intent to Distribute, Sale of Marijuana;
- April 2014: Possession of a Controlled Substance with Intent to Distribute, Sale of a Controlled Substance; and
- April 2014: Possession of Cocaine with Intent to Distribute, Possession of Marijuana with Intent to Distribute.

(PSR ¶ 60-67). Six of the seven convictions received one criminal history point. The other—the March 2009 theft by receiving stolen property conviction—received two criminal history points. Because Nathans's instant conviction was for a controlled substance offense and he had at least two prior controlled

---

[2] The Court also determined that Nathans qualified as a Career Offender within the meaning of Section 4B1.1 of the Sentencing Guidelines, but used the Base Offense Level from Section 2D1.1(a)(1) because it was higher. *See* U.S.S.G. § 4B1.1(b)(1).

substance offenses, as that term was defined by the Guidelines, Nathans qualified as a career offender and Section 4B1.1(b) set his Criminal History Category as Category VI. (PSR ¶ 67; Sentencing Tr. at 2:23-3:7).

Based on a Total Offense Level of 40 and Criminal History Category of VI, Nathans's Guideline Range was 360 months to Life. (Sentencing Tr. at 2:23-3:7). The government filed a motion for a twenty percent reduction based on Nathans's substantial assistance and asked the Court to sentence Nathans to 204 months. (Doc. 34). Nathans requested 120 months. (Doc. 34). The Court sentenced Nathans to 144 months. (Doc. 33 at 2; Sentencing Tr. 14:10-23:17, 25:23-28:17).

### D. Post-Sentencing

Nathans did not appeal his conviction. His conviction became final on November 30, 2022, 14 days after the Court's entry of judgment. (Doc. 33).

On December 4, 2023, the Court docketed a Motion to Vacate, Set Aside, or Correct Sentence Under 28 U.S.C. § 2255. (Doc. 35). The Motion was signed by Alexandra Lagouros on behalf of Nathans; she included a general power of attorney. (*Id*. at 13 and 14-20). The Motion was mailed from Roswell, Georgia, rather than the facility where Nathans is serving his sentence.

## ARGUMENT AND AUTHORITY

### I. Nathan's Motion Should be Denied Because It Is Unsigned and Is Untimely.

Only an attorney or, if unrepresented, a party can sign the Motion. Rule 11 of the Federal Rules of Civil Procedure requires either an "attorney of record" or the "party personally if the party is unrepresented" to sign every pleading, motion, or

6

paper. Fed. R. Civ. P. 11(a). Similarly, Rule 2(b)(5) of the Rules Governing Section 2255 Motions requires a motion be signed by "the movant or a person authorized to sign it for the movant." Nathans did not sign the pleading, nor did any attorney. Rather, Alexandra Lagouros, acting pursuant to a general power of attorney, signed it on his behalf.³ A power of attorney does not authorize a non-attorney to sign a filing on another's behalf. *See Baker v. JP Morgan Chase Bank*, 2016 WL 9453816, at *1-2 (N.D. Ga. Mar. 25, 2016) (collecting cases). In *Brenton*, a district court confronted an identical situation and summarily denied the Section 2255 motion because, *inter alia*, it was signed by someone with power of attorney rather than the petitioner. *United States v. Brenton*, 2007 WL 3124539, at *1-2 (D. Neb. Oct. 23, 2007). The court noted that the petitioner "is housed in a U.S. Bureau of Prisons facility," "[no] showing of incapacity has been made," and "as any other inmate, [she] has the ability to prepare, sign and file her own legal documents." *Id*.

Similarly, because Nathans did not file the Motion, it was filed at an untimely date. A Section 2255 Motion must be filed within one year of the defendant's conviction becoming final. 28 U.S.C. § 2255(f)(1).⁴ For Nathans, that occurred on November 30, 2022, fourteen days after the Court entered its judgment. (Doc. 33). Thus, Nathans needed to file his Motion by November 30, 2023, in order for it to be timely. Nathans's motion reached the Court and was docketed on December 4,

---

³ A search of the State Bar of Georgia Member Directory for the last name Lagouros yielded no results.

⁴ There are three other bases for timeliness that do not apply here. *See* 28 U.S.C. 2255(f)(2)-(4).

7

2023—after the deadline. (Doc. 35). Had Nathans filed the motion himself, he could have benefited from the mailbox rule, which allows an inmate to merely deposit his filing via the institution's mailing system before the deadline. *See* Rules Governing Section 2255 Motions Rule 3(d). But Nathans did not file the motion, Lagorous did. The mailbox rule cannot apply—the filing is untimely.

While the filing deadline is non-jurisdictional, equitable tolling is an "extraordinary remedy" that has been permitted "only sparingly" and should not apply here. *Jones v. United States*, 304 F.3d 1035, 1039, n.9 (11th Cir. 2002) (citing *Harris v. Hutchinson*, 209 F.3d 325, 330 (4th Cir. 2000)). "In the § 2255 context, equitable tolling 'is appropriate when a movant untimely files because of extraordinary circumstances that are both beyond his control and unavoidable even with diligence.'" *Jones*, 304 F.3d at 1039 (quoting *Sandvik v. United States*, 177 F.3d 1269, 1271 (11th Cir. 1999). There is no indication that extraordinary circumstances beyond Nathans's control prevented a timely filing.[5] Nonetheless, although the Motion is unsigned and untimely, the United States will respond to its arguments to conserve judicial resources.

---

[5] In *Michel*, the Eleventh Circuit confronted a different, albeit facially similar, situation: a motion that was otherwise-timely submitted, but rejected by the clerk of the district court because it was unsigned, and thus determined by the district court to be untimely. *Michel v. United States*, 519 F.3d 1267, 1269 (11th Cir. 2008). The Eleventh Circuit determined that a timely, unsigned motion that is subsequently signed by the movant can be timely. *Id*. at 1271-72. The amended rules governing this Motion now require district court clerks to docket even unsigned motions. *See* Rules Governing Section 2255 Motions, Rule 3(b) and Advisory Note. But here, Nathans's improperly-signed Motion was filed after the deadline.

## II. Nathans Fails to Meet His Burden to Establish He Received Ineffective Assistance of Counsel.

Even if the Court considers Nathans's motion timely and properly signed, Nathans does not show any basis for relief under applicable law. Read most favorably, his claims are ones of ineffective assistance of counsel.[6] His Motion does not reach the high standard of proving ineffective assistance.

### A. Standard for Establishing Ineffective Assistance of Counsel

To prevail on a claim of ineffective assistance of counsel, a defendant shoulders the burden to prove by a preponderance of the evidence both incompetence and prejudice, *i.e.*, that "(1) . . . counsel's representation fell below an objective standard of reasonableness [incompetence], and (2) . . . there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different [prejudice]." *Chandler v. United States*, 218 F.3d 1305, 1312-13 (11th Cir. 2000) (en banc); *see also Strickland v. Washington*, 466 U.S. 668 (1984). But "there is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Strickland*, 466 U.S. at 697; *Chandler*, 218 F.3d at 1312.

*Incompetence.* "'Counsel's competence . . . is presumed and the [movant] must rebut this presumption by proving that his attorney's representation was unreasonable under prevailing professional norms[.]" *Chandler*, 218 F.3d at 1315,

---

[6] If they are not viewed as ineffective assistance claims, Nathans's arguments are waived by the appellate waiver in his plea agreement and should be summarily dismissed. (Doc. 3-1 ¶ 34).

n.15 (alterations in original). "Never does the government acquire the burden to show competence, even when some evidence to the contrary might be offered by the petitioner." *Id.* To prove ineffectiveness, a defendant must show that his attorney's representation "fell outside the wide range of professionally competent assistance." *Id.* at 1314 (internal quotation marks omitted). "This standard of effectiveness applies equally to both the guilt and the sentencing phases of the trial." *Mills v. Singletary*, 63 F.3d 999, 1020 (11th Cir. 1995); *Strickland*, 466 U.S. at 686-87.

When evaluating an attorney's performance, the court must be highly deferential. *Chandler*, 218 F.3d at 1314. The court "must avoid second-guessing counsel's performance." *Id.* Instead, the court must "indulge [the] strong presumption that counsel's performance was reasonable and that counsel made all significant decisions in the exercise of reasonable professional judgment." *Id.* (internal quotation marks omitted) (alteration in original). "[B]ecause counsel's conduct is presumed reasonable, for a petitioner to show that the conduct was unreasonable, a petitioner must establish that no competent counsel would have taken the action that his counsel did take." *Chandler*, 218 F.3d at 1315.

***Prejudice.*** To show prejudice, a defendant must show more than simply that counsel's conduct might have had "some conceivable effect on the outcome of the proceeding." *Strickland*, 466 U.S. at 693. "Virtually every act or omission of counsel would meet that test, and not every error that conceivably could have influenced the outcome undermines the reliability of the result of the proceeding." *Id.* (internal citation omitted). Instead, a defendant must show a "reasonable

probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. Prejudice is established only by showing that the result of the proceeding was fundamentally unfair or unreliable. *Lockart v. Fretwell*, 506 U.S. 364, 372 (1993).

In the context of guilty pleas, when a defendant has accepted a plea offer as opposed to proceeding to trial, as is the case here, *Hill v. Lockhart*, 474 U.S. 52 (1985) clarified *Strickland's* "prejudice" requirement by holding that "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59. "In so doing, a defendant must demonstrate that 'a decision to reject the plea bargain would have been rational under the circumstances.'" *Gutierrez v. United States*, 560 F. App'x 924, 927 (11th Cir. 2014) (quoting *Padilla v. Kentucky*, 559 U.S. 356, 372 (2010)).

**B. Analysis**

Nathans arguments, even when read charitably, are contradicted by the law and the record. He can show neither incompetence nor prejudice.

1. **Nathans's Claim that Counsel Should Have Asked the Court to Credit Home Confinement Time Is Incorrect.**

Nathans's first argument is that he should have received credit for some or all of his period of home confinement between his arrest in February 2018 and when he began his term of incarceration in January 2023—and that his attorney was

deficient for not asking for it. (Doc. 35 at 4-5). The Eleventh Circuit held that pretrial home detention does not entitle a defendant to a sentencing credit. *See Rodriguez v. Lamer*, 60 F.3d 745, 748 (11th Cir. 1995). In addition, "the Supreme Court has held that the responsibility for determining sentence-credit awards lies with the Attorney General, through the BOP, as opposed to district courts." *United States v. Robertson*, 746 F. App'x 883, 885 (11th Cir. 2018) (citing *United States v. Wilson*, 503 U.S. 329, 330 (1992)). Because the argument Nathans contends his attorney should have made was foreclosed by binding precedent, he can show neither incompetence nor prejudice. The claim must be denied.

Moreover, while Nathans's counsel could not argue that Nathans' lengthy period of pretrial release should result in a sentencing credit, counsel did not ignore the period of pretrial release when advocating for an appropriate sentence. Nathans's attorney argued at sentencing that Nathans's behavior and success on pretrial release demonstrated that a shorter sentence was proper. (Doc. 30 at 4-6). The Court credited this in determining a sentence, finding that it was "very impressed by what Mr. Nathans has done during his five-plus years in [pretrial] release. He has done—he has done perfectly." (Sentencing Tr. 26:12-23).

### 2. Nathans Cannot Show that His Attorneys Should Have Objected to His Criminal History Calculation.

Second, Nathans argues that "the only criminal history to be used when determining [his] guidelines would be charges in which [he] served jail time greater than 12 months." (Doc. 35 at 6). He claims he would not have accepted the plea deal had he known this information. (*Id*.)

12

Nathans is incorrect. The Sentencing Guidelines allow—indeed, require—the Court to consider sentences in which a defendant serves a sentence of imprisonment of less than one year. *See* U.S.S.G. § 4A1.1(b), (c). Nathans's criminal history category was not in the highest criminal history category because of criminal history points earned for less-than-one-year sentences, but because his multiple prior controlled substance offenses made him a career offender under the Guidelines. *See* U.S.S.G. § 4B1.1(b). Because Nathans does not identify any inaccurate legal advice he received when deciding to plead guilty, he can show neither incompetence nor prejudice.

Again, though his counsel did not make the legally-deficient claim Nathans's Motion puts forward, counsel did argue that the Court should consider the nature of Nathans's prior convictions when determining sentence. (Doc. 30 at 6-7). While acknowledging that Nathans's criminal history was correctly calculated, counsel argued that the Court should consider that each of the prior controlled substance offenses only resulted in probation or a suspended sentence. (*Id.*) The Court did so at sentencing, finding that "the defendant's criminal history is overstated, which is a significant factor in my [sentencing] decision today." (Sentencing Tr. 27:19-21).

### 3. The Facility in which Nathans Serves His Sentence Is Not the Basis of an Ineffective Assistance of Counsel Claim.

Nathans's third ground for relief is the most difficult to understand. He takes issue with the fact that "Grand Prairie"—seemingly the Bureau of Prisons Designation and Sentence Computation Center located in Grand Prairie, Texas—

13

placed a "public safety factor" on him, which means he will "never be eligible to go to a camp" despite "low safety points" and "good con[duct]." (Doc. 35 at 8). He says he contacted his lawyer to address this without success. (Doc. 35 at 9). This appears to be a complaint about Bureau of Prisons policy, and not a proper ground for a Section 2255 motion. *Cf. Wilson*, 503 U.S. at 335 ("After a district court sentences a federal offender, the Attorney General, through the BOP, has the responsibility for administering the sentence."); *United States v. Abdullah*, 2017 WL 1756256, at *2 (N.D. Ga. May 5, 2017) ("[A] sentencing court has no authority to order that a convicted defendant be confined in a particular facility.") (quoting *United States v. Williams*, 65 F.3d 301, 307 (2d Cir. 1995)); *see also* 18 U.S.C. § 3621(b) ("The Bureau of Prisons shall designate the place of the prisoner's imprisonment…"). Because Nathans's third ground for relief does not challenge his sentence on any basis permitted by Section 2255(a), it must be denied.

### 4. Nathans Cannot Meet His Burden to Show that Counsel's Lack of Responsiveness Was Constitutionally Ineffective and Prejudicial.

Nathans's final ground for relief is a general argument that his counsel did not spend enough time with him to help him understand his case and answer his questions. His argument fails to show either incompetence or prejudice and must be denied.

As to competence, Nathans does not meet his burden to overcome the presumption that his counsel acted reasonably under prevailing professional norms. *Chandler*, 218 F.3d at 1315 n.15. Other than indicating he met with Mr. Cognac once or twice before sentencing, he gives no details of how often he met

with counsel nor for how long. Nor does he mention whether they communicated about his case outside of in-person meetings, such as by phone or email. Failure to include these specifics describing how the alleged lack of communication "fell outside the wide range of professionally competent assistance," requires the Court deny the claim. *See United States v. Cox*, 782 F. App'x 674, 679 (10th Cir. 2019) (denying *pro se* motion for failing to include specifics of lack of communication). Even if he did, courts have held that "brevity of consultation time between a defendant and his counsel, alone, cannot support a claim of ineffective assistance of counsel." *Murray v. Maggio*, 736 F.2d 279, 282-83 (5th Cir. 1984); *see also Jones v. Wainwright*, 604 F.2d 414, 416 (5th Cir. 1979) (counsel can provide effective assistance "even if counsel only spends a short time with his client.").[7]

Nathans does not include any reason to believe there was prejudice from the alleged lack of communication. The Court can thus deny this claim even without analyzing whether counsel's performance was deficient. *See Osley v. United States*, 751 F.3d 1214, 1222 (11th Cir. 2014). The Eleventh Circuit previously said in an analogous context that, "prejudice is at least as important [an] . . . element of any claim that a conviction should be set aside because of animosity resulting in a breakdown in communication between a defendant and his counsel." *See United States v. Hatcher*, 2011 WL 4425314, at *8 (11th Cir. 2011). Nathans's Motion provides no information he would have provided to his attorney nor any answer

---

[7] Decisions of the Fifth Circuit issued before October 1, 1981 are binding precedent in this circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

to a question that would have changed the course of the case, the plea offer he agreed to, his decision not to appeal, or the ultimate sentence he received. The available evidence shows the opposite: despite a Guidelines range of 360 months to life, his counsel's advocacy (in addition to Nathan's laudable actions) persuaded the United States to recommend just 204 months—3 years under the mandatory minimum that would have otherwise applied. (PSR at 26; Doc. 31 at 1). His counsel's advocacy, including coordinating for five people to speak to the Court at his sentencing, helped persuade the Court to impose a sentence of 144 months— 60% below the bottom of his Guidelines range, 8 years under the mandatory minimum, and 5 years fewer than the United States requested. (Doc. 33 at 2; Sentencing Tr. 14:10-23:17, 25:23-28:17).

### III. The Record Is Sufficient for the Court to Resolve the Issues without an Evidentiary Hearing.

Nathans is not entitled to an evidentiary hearing. "A federal habeas corpus petitioner is entitled to an evidentiary hearing only where the petitioner alleges facts which, if proven, would entitle [him] to relief." *Futch v. Dugger*, 874 F.2d 1483, 1485 (11th Cir. 1989). "A hearing is not required on patently frivolous claims or those which are based upon unsupported generalizations. Nor is a hearing required where the petitioner's allegations are affirmatively contradicted by the record." *Holmes v. United States*, 876 F.2d 1545, 1553 (11th Cir. 1989) (internal citations and quotation marks omitted). After reviewing the record, the decision of whether to conduct an evidentiary hearing is within a court's sound discretion. *United States v. Lagrone*, 727 F. 2d 1037, 1038 (11th Cir. 1984).

Here, the record establishes that Nathans's claims are affirmatively contradicted by the record, so a hearing is not warranted.

### IV. Nathans Is Not Entitled to a COA.

Rule 11(a) of the Rules Governing Section 2255 Proceedings provides that a district court must issue or deny a Certificate of Appealability ("COA") at the time it enters a final order adverse to the defendant. Under 28 U.S.C. § 2253, the Court may only issue a COA if the applicant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). In addition, the COA must indicate which specific issue or issues satisfy the required showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(3). In order to obtain a COA, a petitioner must show that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 475 (2000).

Here, Nathans is not entitled to a COA because he has not made a substantial showing of the denial of a constitutional right. The record and relevant law establish that Nathans's counsel at all times provided the "reasonably effective assistance" required by the Sixth Amendment. *See Ward v. United States*, 694 F.2d 654, 664 (11th Cir. 1983) ("the Sixth Amendment requires 'not errorless counsel, and not counsel judged ineffective by hindsight, but counsel reasonably likely to render and rendering reasonably effective assistance'"). The Court should therefore decline to issue a COA.

## Conclusion

For the foregoing reasons, Nathans's 28 U.S.C. § 2255 Motion to Vacate, Set Aside, or Correct Sentence should be denied. The Court should also decline to issue a certificate of appealability.

Respectfully submitted,

R<span>YAN</span> K. B<span>UCHANAN</span>
*United States Attorney*

/s/M<span>ATTHEW</span> R. L<span>A</span>G<span>RONE</span>
*Assistant United States Attorney*
Georgia Bar No. 499437
matthew.lagrone@usdoj.gov

600 U.S. Courthouse, 75 Ted Turner Drive S.W., Atlanta, GA 30303
(404) 581-6000   fax (404) 581-6181

**Certificate of Service**

The United States Attorney's Office served this document today by sending a copy by first class mail with sufficient postage to:

        Hubert Nathans #71360-019
        Memphis FCI
        1101 John A. Denie Road
        Memphis, TN 38134


February 12, 2024

        /s/ MATTHEW R. LAGRONE
        MATTHEW R. LAGRONE
        *Assistant United States Attorney*